**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONTINENTAL RESOURCES, INC.,<br>P.O. Box 269000<br>Oklahoma City, OK 73126 | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| SALLY JEWELL<br>Secretary<br>United States Department of the Interior<br>1849 C Street N.W.<br>Washington, DC 20240, and | )<br>)<br>)<br>)<br>)<br>) |
| GREGORY J. GOULD<br>Director<br>Office of Natural Resources Revenue<br>United States Department of the Interior<br>1849 C Street N.W., MS 4211<br>Washington, DC 20240, and | )<br>)    Civil Action No._____<br>)<br>)<br>)<br>) |
| JAMES P. MORRIS<br>Supervisory Minerals Revenue Specialist<br>Western Audit and Compliance Management<br>Office of Natural Resources Revenue<br>Western Audit and Compliance<br>P.O. Box 25165<br>Building 85, Denver Federal Center<br>Denver, CO 80225-0165, and | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| OFFICE OF NATURAL RESOURCES<br>REVENUE,<br>1849 C Street, N.W.<br>Washington, DC 20240, and | )<br>)<br>)<br>)<br>) |
| UNITED STATES DEPARTMENT OF<br>THE INTERIOR,<br>1849 C Street, N.W.<br>Washington, DC 20240 | )<br>)<br>)<br>) |
| Defendants. | |

## COMPLAINT

This is a challenge to the assessment of additional royalties by the Office of Natural Resources Revenue ("ONRR"), an agency within the Department of Interior ("DOI"). ONRR assessed those additional royalties, totaling $1,772,612.07 plus interest, against Plaintiff Continental Resources Inc. ("Continental") in connection with Continental's extraction of natural gas pursuant to federal leases. Continental brings this action under the Administrative Procedure Act, 5 U.S.C. §§701-706, seeking vacatur of the challenged final agency action, as well as declaratory and injunctive relief.

ONRR is the federal agency charged with assessing and collecting royalties for natural gas produced on federal lands. These royalties must be based on the "value of production" of the gas extracted from the lease. *See* 30 U.S.C. §226. ONRR's predecessor agency, the Minerals Management Service ("MMS"), promulgated regulations for assessing royalties, including how to value production, in the 1980s. These regulations apply different valuation methods depending largely on whether or not the gas has been processed and whether or not the gas is sold by the lessee under arm's-length contracts.

Natural gas is extracted from the ground in a raw or unprocessed form; it is a mixture of various types of hydrocarbons. Following extraction, unprocessed gas can be processed by removing any contaminants that may exist and separating the gas into different products. The gas-based resources at issue here were extracted on federal leases in unprocessed form by Continental and sold as such (*i.e.*, without any processing) to Hiland Partners, L.P. ("Hiland") pursuant to a contract that ONRR deemed non-arm's-length.[1] The sales price paid to Continental

---

[1] Continental challenged that determination in the administrative proceedings below. Although Continental continues to assert that the finding is incorrect, Continental does not challenge that determination in this present Complaint and instead seeks relief from this Court based on the arguments set forth below.

by Hiland for the gas averaged about one cent *higher* than the sales price paid on average under

Hiland's arm's-length contracts with other companies for similar unprocessed gas in the area—

thus resulting in *greater royalties* paid to the government and vitiating any inference that the

allegedly non-arm's-length contract price understated the value of the gas (and hence royalties).

Subsequently, Hiland processed the gas and sold virtually all of the resulting products, known as

"residue gas" and "gas plant products," to other companies under arm's-length contracts.

Despite these facts, ONRR assessed royalties against Continental under 30 C.F.R.

§206.153(c),[2] which applies to valuation of "residue gas or any gas plant product which is not

sold pursuant to an arm's-length contract."  That provision manifestly does not apply because

virtually all of the "residue gas" and "gas plant products" at issue were sold by *Hiland* under

contracts that all parties agree were arm's-length.  ONRR's attempt to use §153(c) for purposes

of enhancing royalties collected from Continental thus squarely violates the plain text of the

governing regulations.

ONRR has largely defended its application of §153(c) by arguing that although §153(c)'s

text does not fit the factual circumstances, ONRR's other regulatory provisions concerning

valuation of natural gas would fit even worse.  That rationale is unlawful.  If a factual

circumstance does not fit the plain text of a regulation, the agency may not apply it.  At all.  If

ONRR's regulations are drafted so poorly that no provision fits, the remedy for ONRR's self-

inflicted "dilemma" is for the agency to amend its regulations prospectively such that their actual

text matches ONRR's intent—not to contort the regulation's plain text so badly that the agency

applies a patently inapplicable provision.  And because §153(c) unambiguously does not apply

---

[2]  Unless otherwise noted, all C.F.R. citations refer to the 2003 edition of the Code of Federal Regulations.  It is undisputed that this edition of the regulations reflects the relevant language of these regulations in force for the relevant time periods, which since have been amended.  A copy of the applicable regulations is attached hereto as Exhibit A.

here, no deference is owed to ONRR's "interpretation" of the valuation regulations.  *See, e.g.,*
*Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871, 880 (2011) (*Auer* deference does not apply
when an agency's interpretation is "'plainly erroneous or inconsistent with the regulation.'"
(citation omitted)).

DOI previously understood these basic principles.  In a 2004 audit, DOI concluded that
Continental properly applied §152 to value its royalties for gas extracted in 2001—when the
relevant parties, contracts and hydrocarbon products were *precisely the same*.  But apparently no
longer content with the §152 valuation method it previously accepted, DOI has now sought to
augment its collections by applying §153(c), despite the lack of any intervening change in facts
and the clear textual inapplicability of that provision.  That effort is unlawful.

This is not the first time that DOI has employed a royalty valuation regulation whose text
plainly did not apply in service of enhancing the amount of royalties it collects.  In *Fina Oil &
Chemical Co. v. Norton*, the D.C. Circuit concluded that ONRR's predecessor agency
"interpret[ed] a [valuation] regulation to mean the opposite of its plain language" and therefore
could not lawfully value the production at issue under that regulation.  332 F.3d 672, 673 (D.C.
Cir. 2003).  So too here.  ONRR's application of a patently inapplicable regulation must be
rejected.

Moreover, even if ONRR's "least worst fit" premise were legally valid, its conclusion
that no other provision fits is not.  Instead, there are two other valuation provisions whose text
could fit this situation.  First, ONRR could have applied Section 152, which applies to valuation
of "*all* gas that is *not processed*."  30 C.F.R. §206.152(a)(1) (emphasis added).  Applying that
provision, ONRR could have found that Continental properly calculated its royalty payments
under §152(c) because the value of the production as determined by Continental was equivalent

to or greater than the value of production under similar arm's-length contracts.  Indeed the record here demonstrates that the contract price—and consequently royalties paid to ONRR—actually *exceeded* the average price in comparable market/arm's-length contracts.  Reliance on §152 for valuing gas that is "not processed" perfectly fits here—it was the form of the gas at issue when Continental extracted it from the ground and continued to be its form when Continental sold it to Hiland and lost possession of it.  Section 152 thus plainly could apply for valuation purposes here.

Second, and alternatively, even if §152 were construed not to apply, and the gas must instead be valued as processed "residue gas" and "gas plant products," then ONRR could have applied §153(b) rather than §153(c).  That section applies to "residue gas or any gas plant product sold under an arm's-length contract," 30 C.F.R. §206.153(b), which is precisely the type of contract pursuant to which Hiland sold virtually all of the residue gas and gas plant products to downstream buyers—not the *non*-arm's-length contracts that §153(c) requires.

But even though ONRR could readily have applied either §152 or §153(b) to valuing the gas at issue, ONRR instead chose a provision, §153(c), that cannot be lawfully applied to the facts here.  That action is contrary to law and must be vacated.

## JURISDICTION AND VENUE

1.      Continental seeks vacatur of and declaratory and injunctive relief from an April 11, 2013 decision of DOI's Director of ONRR (hereinafter "Decision," attached hereto as Exhibit B), which grants in part and denies in part Continental's appeal of the Minerals

Management Service ("MMS") Order to Report and Pay Additional Royalties, issued May 5, 2010.[3]

2.  Continental seeks to have the Decision and underlying Order declared unlawful and set aside under section 10 of the Administrative Procedure Act ("APA"), 5 U.S.C. §706. Continental has suffered legal wrong from, and is adversely affected or aggrieved by, the Decision and underlying Order within the meaning of 5 U.S.C. §702.

3.  The Decision is not subject to further appeal within the agency, as determined by a July 29, 2013 decision by the Interior Board of Land Appeals ("IBLA") (attached hereto as Exhibit C), and is the final action of DOI.  Under section 4(a) of the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 ("Fairness Act"), DOI must, within 33 months, issue a final ruling in an appeal of an oil and gas royalty order or demand.  30 U.S.C. §1724(h).  Failure to do so triggers a default statutory resolution of the matter, rendering the agency's prior decision final, and granting the appellant a right to review under the APA.  *Id.* §1724(h)(2).  The 33-month period may be extended only by mutual written agreement of the appellant and the Secretary.  *Id.* §1724(h)(1).

4.  Continental appealed the Order to the IBLA in June of 2010, triggering the running of the 33-month Fairness Act period.  Continental and MMS entered into an "Extension and Hold Agreement" ("Standstill Agreement") on July 26, 2010, agreeing to toll the running of the 33-month deadline from June 12, 2010 through December 13, 2010, "pending completion of settlement discussions between the appellant and MMS."  The Agreement provided that either

---

[3]  As explained below, the relevant regulatory agency within DOI changed names three times over the course of these proceedings.  For simplicity, references to ONRR include its predecessor agencies, the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE") and MMS, as appropriate.

party may terminate the Agreement by giving written notice, and the clock would begin to run again 30 days after the date of such notice.

5.      ONRR, however, never commenced settlement negotiations with Continental, despite Continental's efforts to begin discussions.  Less than a month later, on August 18, 2010, ONRR sent Continental a letter informing it of ONRR's "decision not to enter into settlement discussions" and that ONRR was returning the matter to the administrative appeals process.  As the IBLA found, the clock thus restarted on the Fairness Act's 33-month deadline 30 days from the date of ONRR's termination letter, leading to a deadline of June 17, 2013 for the Department to act upon Continental's appeal of the Order.

6.      ONRR issued its Decision on April 11, 2013, and Continental timely appealed ONRR's decision to the IBLA on May 22, 2013.  On July 29, 2013, the IBLA dismissed Continental's pending appeal pursuant to 30 U.S.C. §1724(h), concluding that it lacked jurisdiction under the Fairness Act following the expiration of the 33-month deadline. *Continental Resources, Inc.*, 184 IBLA 59 (2013).  The IBLA concluded that ONRR made "no plausible argument" as to why the IBLA should retain jurisdiction over the appeal.  *Id.* at 63.

7.      The IBLA further expressed exasperation with ONRR's pace of decision-making and positions before the Board:  "The Board notes that even under ONRR's interpretation of the circumstances in this case, the deadline for the Department to make a final ruling is Aug. 12, 2013.  ONRR also has announced its intention to 'timely file' its answer to Continental's [statement of reasons for appeal] on July 22, 2013.  Thus, ONRR ambitiously expects the Board to make a well-founded and reasoned ruling on Continental's appeal within 21 days, on a matter that ONRR admits required at least 34 months of active deliberation by ONRR before it issued its Apr. 11, 2013, decision."  *Id.* at 64 n.5 (citations omitted).

8.      On September 24, 2013, following the expiration of the Fairness Act's deadline for Board action, ONRR sought reconsideration of the IBLA's July 29, 2013 decision dismissing the appeal.  Among the reasons advanced by ONRR for reconsideration of the dismissal were that limitations on ONRR's resources made the extension of the 33-month deadline necessary. That reconsideration motion is meritless because (1) the IBLA correctly concluded that the Fairness Act's deadline had passed and therefore it lacked ongoing jurisdiction over the matter, *id.* at 64, and (2) even if the deadline had been extended as ONRR contends, the purportedly extended deadline had *expired* prior to ONRR's filing of its motion for reconsideration, and the IBLA therefore had no jurisdiction to entertain the untimely motion.

9.      ONRR's disregard for the plain language of its own regulations in the assessment of royalties, its use of settlement negotiations as a pretext for an extension of the 33-month appeal deadline, and its filing of a time-barred motion for reconsideration is compelling evidence that ONRR has little regard for the limitations on its power imposed by laws and regulations. ONRR's course of conduct in this matter is replete with objective evidence indicative of ONRR's bad faith.

10.      Because the IBLA lost jurisdiction pursuant to the Fairness Act's 33-month limitation on internal DOI review, the Decision is now subject to judicial review as final agency action of DOI under 5 U.S.C. §704.  *See* 30 U.S.C. §1724(h)(2) ("If no such decision has been issued by the Secretary within the 33-month period … the Secretary shall be deemed to have issued a final decision in favor of the Secretary … as to any monetary obligation the principal amount of which is $ 10,000 or more, *and the appellant shall have a right to judicial review of such deemed final decision in accordance with title 5 of the United States Code.*" (emphasis added)).  ONRR's attempt to seek reconsideration from the IBLA does not affect this Court's

jurisdiction because that motion for reconsideration was filed with an agency that lacks jurisdiction to hear it.

11.     This action arises under the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. §181 *et seq.*, the Federal Oil and Gas Royalty Management Act of 1982, as amended by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996, 30 U.S.C. §1701 *et seq.*, the APA, 5 U.S.C. §500 *et seq.*, the Due Process Clause of the 5th Amendment to the U.S. Constitution, and ONRR's regulations, including 30 C.F.R. Part 206.

12.     The Court has jurisdiction under 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1346 (United States as defendant), 28 U.S.C. §§2201-02 (declaratory relief) and 5 U.S.C. §702 (Administrative Procedure Act).  An actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. §§2201-02.

13.     Venue is proper under both 28 U.S.C. §1391(e)(1)(A), because defendant federal officers and agencies reside in this District, and 28 U.S.C. §1391(e)(1)(B), because a substantial portion of the challenged decision-making occurred in this District.

## THE PARTIES

14.     Plaintiff Continental is an Oklahoma Corporation with its principal place of business in Oklahoma City, Oklahoma.

15.     Continental is now, and at all relevant times in the past was, a lessee under the DOI-administered leases in Washakie County, Wyoming under Federal Agreement Number 891-000463-A (the "Leases").

16.     DOI awarded the Leases at various times preceding the applicable royalty periods at issue here.  Until 2010, an agency within DOI, the Minerals Management Service ("MMS"), promulgated and administered regulations establishing procedures for the collection of royalties,

setting royalty rates, and determining the value of production under federal leases for the purpose of calculating federal royalty payments.  Following a reorganization in 2010, responsibility for assessing royalties lay briefly with BOEMRE, and since October 1, 2010, has rested with ONRR.

17.     Defendant Sally Jewell is the Secretary of DOI and is sued in her official capacity.

18.     Defendant Gregory J. Gould is the Director of the Office of Natural Resources Revenue and is sued in his official capacity.

19.     Defendant James P. Morris is Supervisory Minerals Revenue Specialist in Western Audit and Compliance Management of the Office of Natural Resources Revenue, and is sued in his official capacity.

20.     Defendant ONRR is a federal government agency within the Department of the DOI with authority over federal gas lease royalties.

21.     Defendant DOI is a federal executive department of the United States government.

## GENERAL ALLEGATIONS

22.     Continental is the holder of federal leases in the Cottonwood Creek area of Washakie County, Wyoming under Federal Agreement Number 891-000463-A.

23.     On May 21, 2000, Continental entered into an arm's-length gas-purchase contract with Wildhorse Energy Partners, L.L.C. ("Wildhorse").  Under the contract, Continental would sell all unprocessed gas produced on its Cottonwood Creek properties to Wildhorse.  The term of the contract extends from January 1, 2001 until production on the Cottonwood Creek properties ceases.  The price formula under the contract has not changed since its initial execution.

Continental has no right to terminate the contract early or to require Wildhorse to renegotiate the price.

24.     Wildhorse later assigned its contract with Continental to Hiland Partners, L.P. ("Hiland").

25.     Hiland processes the gas it purchases from Continental, and from other producers, and sells nearly all of the residue gas and gas plant products to third parties pursuant to arm's-length contracts, as well as a very small amount back to Continental.

26.     Continental, as the lease holder, pays royalties on production under the Leases for all gas produced.

27.     In 2004, MMS audited Continental's payments of royalties on production under the Leases for the Cottonwood properties during the period from June 1998 through December 2001.  The audit, which assessed Continental's royalty payments regarding sales made to Hiland during the calendar year 2001, concluded that Continental paid the appropriate amount of royalties for the period.  Continental valued its production under the Cottonwood leases under 30 C.F.R. §206.152 during calendar year 2001 and for all periods at issue in this case.  But although DOI accepted valuation under §152 for 2001, it has now (without persuasive rationale for the change) demanded valuation of royalties under §153(c).

## GOVERNING STATUTORY AND REGULATORY PROVISIONS

28.     Under the Mineral Leasing Act, 30 U.S.C. §181 *et seq.*, the DOI issues and administers gas leases for federal lands.  Under such leases, private companies sell gas production directly and the government charges the lessee royalties based on the "value of the production" removed or sold from the leased lands.  30 U.S.C. §226(b)(1)(A).

29.     Concerned that the system of accounting with respect to royalties on federal lands was "archaic and inadequate," 30 U.S.C. §1701(a)(2), Congress enacted the Fairness Act, 30 U.S.C. §1701 *et seq.* (1996).  The Fairness Act directed the Secretary to establish a comprehensive inspection, collection and fiscal production accounting and auditing system to provide the capability to accurately determine oil and gas royalties owed.  30 U.S.C. §1711(a).

30.     Pursuant to these statutes, MMS promulgated regulations establishing methods for determining the "value of production" for royalty calculation purposes.  *See* Revision of Gas Royalty Valuation Regulations and Related Topics, 53 Fed. Reg. 1230 (Jan. 15, 1988) (codified at 30 C.F.R. §§206.152 (unprocessed gas), 206.153 (processed gas)).

31.     These regulations value gas based on different methodologies depending on certain qualities of the gas at issue—most importantly whether the gas is processed or unprocessed, and the identity of "the particular entity to whom producers first sell the gas."  *Fina Oil*, 332 F.3d at 673-74.

32.     Under the governing regulations, §206.152 applies to the valuation of "*all* gas that is *not processed* and all gas that is processed but is sold or otherwise disposed of by the lessee pursuant to an arm's-length contract prior to processing."  30 C.F.R. §206.152(a)(1) (emphasis added).

33.     By contrast, §206.153 applies to the valuation of "all gas that is processed by the lessee and any other gas production to which this subpart applies and that is not subject to the valuation provisions of §206.152 of this part."  *Id.* §206.153(a)(1).  Under §153, the value of the gas is determined by the combined value of the residue gas and the plant products following processing.  *Id.* §206.153(a)(2).

34.     Valuation of processed gas under §153 is governed in relevant part by two distinct provisions.  Section 153(b) applies to "residue gas or any gas plant product sold under an arm's-length contract."  *Id.* §206.153(b)(1)(i).  Section §153(c), by contrast, applies to valuation of "residue gas or any gas plant product which is not sold pursuant to an arm's-length contract."  *Id.* §206.153(c).

## AGENCY PROCEEDINGS AND DECISIONS AT ISSUE

35.     On May 5, 2010 MMS issued to Continental an Order to Report and Pay Additional Royalties for the lease period from January 1, 2003 through December 31, 2006 (hereinafter "Order").  The Order stated that Continental had used an incorrect method for valuing its gas production during this period and directed Continental to pay additional royalties totaling $1,772,612.07 plus interest.

36.     The Order is terse, confusing and incoherent.  The Order begins by finding that Hiland and Continental are affiliated parties under the valuation regulations.  That is not contested in the current complaint.  Then, the Order simply recites the text of 30 C.F.R. §206.153(c) and applies it to Continental's royalty valuation without setting forth any factual basis to establish the applicability of that provision.  The Order does not explain why §153 applies at all in light of the fact that Continental's sales are sales of unprocessed gas—gas whose valuation falls within §152.  Furthermore, nowhere does the Order make the necessary predicate finding that the residue gas and gas plant products it purports to value were "*not* sold pursuant to an arm's-length contract."  *See* 30 C.F.R. §206.153(c) (emphasis added).  Indeed, the Order essentially concedes that virtually all of the residue gas and gas plant products at issue were actually sold pursuant to *arm's-length* contracts.  *See* Order at 2-3.  But the Order nonetheless applies §153(c), essentially ignoring §153(b) and deleting the "not" in §153(c)'s text—*i.e.*,

striking "not" from "residue gas or any gas plant product, which is not sold pursuant to an arm's-length contract."

37.     Continental timely appealed the Order to the MMS (the predecessor agency to ONRR) on June 10, 2010.

38.     On April 11, 2013, the director of ONRR ("Director"), issued a Decision which upheld the Order in relevant part.  The Decision similarly applied §153(c) in determining Continental's royalty valuation.  The Director also set aside ONRR's Order in part on grounds not relevant to this action.[4]

39.     Continental timely filed a Notice of Appeal and Petition for Stay on May 22, 2013, appealing ONRR's decision to the IBLA.

40.     On appeal, ONRR offered only a terse and conclusory argument for why the gas at issue fell within §153(c), essentially arguing that it was the least-worst fit.  *See* ONRR IBLA Answer at 20 (attached hereto as Exhibit D) ("[Continental's] interpretation of the regulations would give ONRR no regulatory options to value Continental's gas under the plain meaning of the regulations."); *id.* ("There are no other provisions in section 206.153 for ONRR to use to value [Continental's] gas").

41.     On July 29, 2013, the IBLA dismissed Continental's appeal for lack of jurisdiction pursuant to section 4(a) of the Fairness Act, 30 U.S.C. §1724 (2006).  *Continental Resources*, 184 IBLA at 64.  As a result, the Director's April 11, 2013 Decision was rendered final agency action and "Continental may immediately seek judicial review of the Secretary's deemed decision."  *Id.*

---

[4]  The Director's Decision also held that Continental must value its gas under §153(c)(2) rather than §153(c)(1), as ONRR had originally ordered.  That holding is not relevant to this action as Continental argues that §153(c) does not apply at all.

## DEFENDANTS' VIOLATIONS OF LAW

42.     The Director's Decision is arbitrary and capricious, and contrary to law because it contravenes the plain and unambiguous meaning of the regulations he purported to apply.

43.     It is plain on its face that §153(c) cannot apply to Continental's sales to Hiland. Section 153(c) applies to "residue gas or any gas plant product which is not sold pursuant to an arm's-length contract."  30 C.F.R. §206.153(c).  Continental did not sell residue gas or gas plant products.  Instead, it extracted gas from the ground that was not processed and sold that gas to Hiland still in unprocessed form.  As ONRR itself stated, "Continental's [allegedly] non-arm's-length sales" were for "unprocessed gas."  ONRR Decision at 2, 3, 14.

44.     ONRR's rationale that §153(c) applies is unlawful.  ONRR may not simply ignore the plain text of its own regulations.  *See, e.g.*, *Fina Oil*, 332 F.3d at 673.  If ONRR wishes to apply the valuation methodology set out in §153(c) to non-arm's-length sales of gas that are subsequently processed and sold at arm's-length, it is free to do so through notice-and-comment rulemaking.  ONRR cannot, however, modify its regulations by interpreting them in ways that run directly contrary to their plain meaning.

45.     ONRR's justification for applying §153(c) lacks merit.  According to ONRR, the agency "correctly interpreted its regulations to mean that [Continental's] non-arm's-length contract sales of unprocessed gas is the non-arm's-length-contract sale of residue gas and gas plant products under 30 C.F.R. §206.153(c)."  ONRR IBLA Answer at 20.  But "unprocessed gas" is, of course, not "residue gas and gas plant products"—and indeed is the opposite of it.  An agency cannot "correctly" interpret a term to be its antonym—here interpreting *un*processed gas to mean processed gas products.

46.     While there are certain extremely narrow circumstances where a legal provision can be applied opposite its text, such as a "scrivener's error" or where the absurdity doctrine applies, ONRR has not argued that any such circumstance applies here.  Nor does any.

47.     Principles of deference cannot save ONRR's "interpretation" of its regulations because §153(c) unambiguously does not apply here.  In addition, deference should not apply as ONRR has failed to give fair notice of its interpretation, it has not consistently interpreted its regulations, and "there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question.'"  *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (citation omitted).

48.     Instead of applying §153(c), ONRR could have reasonably applied either §152 or §153(b).

49.     ONRR could have applied §152 to value the gas at issue, since that section applies to "*all* gas that is *not processed*."  30 C.F.R. §206.152(a)(1) (emphasis added).  Section 152 is stated in the conjunctive such that it applies to both "all gas that is not processed and all gas that is processed but is sold or otherwise disposed of by the lessee pursuant to an arm's-length contract prior to processing . . . ."  *Id.* §206.152(a)(1).  Because of the conjunctive construction, §152 should apply to both types of defined gas.  In addition, the use of the conjunctive "and" necessarily means that the definition of the second type of included gas to be valued under §152 does not modify the first type—"gas that is not processed"—and instead only adds to the coverage of §152.

50.     Alternatively, even if §152 did not apply and ONRR could lawfully interpret its regulations to analyze Hiland's sales of residue gas and gas plant products, it is nonetheless still unambiguously clear that the text of §153(c) cannot be applied to virtually all of Hiland's sales.

If any part of §153 applies to those sales, it would be §153(b), which covers arm's-length sales of residue gas and plant products.[5] Nearly all of Hiland's sales were made at arm's-length. Section 206.153(c) therefore cannot apply to the sale of such gas. Instead, ONRR was required to apply §153(b) for all the residue gas and gas plant products that were sold by Hiland under arm's-length contracts.

51.     In addition, ONRR's actions violate Continental's due process rights. It is a "fundamental principle in our legal system . . . that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012). ONRR's interpretation cannot satisfy that standard. Without any guidance or prior decisions that could provide fair notice, ONRR has refused to utilize two provisions that apply under their literal terms—§152 and §153(b)—and instead applied a provision (§153(c)) that, by its literal terms, plainly does not. Moreover, ONRR's 2004 audit *approved* of Continental's use of §152 to value its production, further exacerbating the lack of notice that ONRR might apply §153(c). Thus, even if ONRR's interpretation could be upheld, its application of Section 153(c) was unforeseeable. Continental lacked fair notice that ONRR would contort the regulations' text to reach the (at best) counter-intuitive interpretation here, resulting in Continental's exposure to over one million dollars in additional royalties.

---

[5]   Hiland sold a small portion of the processed residue gas and gas plant products back to Continental. As to that gas, ONRR could apply either §152 or §153(c), as the residue gas and gas plant products were sold back to Continental pursuant to a non-arm's-length contract. For the remaining gas that was sold at arm's-length, however, §153(c) unambiguously does not apply regardless of whether the gas products at issue are deemed "not processed" or "residue gas"/"gas plant products."

## COUNT I

### Violations Of The Administrative Procedure Act

52.     Continental repeats and re-alleges the allegations of paragraphs 1-50, above, as if fully set forth herein.

53.     Defendants' use of §153(c) to assess additional royalties from Continental is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law because it applies the governing regulations directly contrary to their plain text and fails to provide an adequate rationale to sustain Defendant's Decision.

54.     The Decision is also arbitrary and capricious and an abuse of discretion because it departs from DOI's prior acceptance of Continental's royalty calculations for the leases at issue without adequate explanation.

55.     The Decision also violates the APA, 5 U.S.C. §500 *et seq.*, in that it substantially departs from DOI's prior interpretation of its regulations without notice-and-comment rulemaking.  *See Fina Oil*, 332 F.3d at 676 ("[T]o prevent agencies from circumventing the notice-and-comment process by rewriting regulations under the guise of interpreting them, we will reject an agency interpretation that is 'plainly erroneous or inconsistent with the regulation.'" (citation omitted)).

## COUNT II

### Violations Of The Mining Leasing Act

56.     Continental repeats and re-alleges the allegations of paragraphs 1-50, above, as if fully set forth herein.

57.     The Decision violates the Mineral Leasing Act, 30 U.S.C. §181 *et seq.*, in that it fails to determine royalties based on the "value of production." 30 U.S.C. §226.

18

## COUNT III

### Due Process Violations

58.    Continental repeats and re-alleges the allegations of paragraphs 1-50, above, as if fully set forth herein.

59.    The Decision violates Continental's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution because ONRR failed to provide fair notice of its at best dubious and counter-intuitive interpretation of the valuation regulations.

### PRAYER FOR RELIEF

WHEREFORE, Continental Resources, Inc. prays that the Court:

(a)    Hold unlawful and vacate the Decision and underlying Order as arbitrary and capricious, an abuse of discretion and/or otherwise not in accordance with the law;

(b)    Enter a declaratory judgment that the Decision and underlying Order are arbitrary and capricious, an abuse of discretion and/or otherwise not in accordance with the law;

(c)    Enter a declaratory judgment that Defendants unlawfully applied §153(c) to the gas products at issue here and that such products must instead be valued under either §152 or §153(b);

(d)    Enjoin Defendant from enforcing the Decision and the underlying Order and from applying §153(c) to valuation of gas extracted by Continental in analogous circumstances;

(e)    Award Continental its costs and attorneys' fees to the extent permitted by law;

(f)    Grant such other relief as may be appropriate in the circumstances; and

(g)    Retain jurisdiction over this action for such additional or supplemental relief as may be required.

January 16, 2014                    Respectfully Submitted,

                                   /s/ Kenneth J. Simon
                                   Kenneth J. Simon (DC Bar No. 942508)
                                   Sara K. Orr (DC Bar No. 493765)
                                   Drew C. Ensign (DC Bar No. 976571)
                                   LATHAM & WATKINS LLP
                                   555 11th Street NW, Suite 1000
                                   Washington, DC 20004
                                   Phone: (202) 637-2200
                                   Facsimile: (202) 637-2201
                                   *Counsel for Plaintiff Continental Resources, Inc.*