UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 29 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

CONTINENTAL RESOURCES, INC., )
)
Plaintiff, )
)
v. ) Case No 1:14-cv-00065-RDM
)
SALLY JEWELL, ET AL. )
)
Defendants. )
)

## MEMORANDUM OPINION

Plaintiff Continental Resources, Inc. ("plaintiff") filed suit against defendants Sally Jewell, Secretary of the United States Department of the Interior; Gregory J. Gould, Director of the Office of Natural Resource Revenue, United States Department of the Interior; James P. Morris, Supervisory Minerals Revenue Specialist, Western Audit and Compliance Management, Office of Natural Resource Revenue, United States Department of the Interior; Office of Natural Resources Revenue; and United States Department of the Interior (collectively "defendants") on January 16, 2014 challenging the "assessment of additional royalties by the Office of Natural Resources Revenue" of $1,772,612.07 (plus interest) against plaintiff "in connection with [plaintiff]'s extraction of natural gas pursuant to federal leases." Compl., ECF No. 1. Plaintiff filed its Amended Complaint on March 18, 2014 adding a fourth claim alleging violation of the Freedom of Information Act, 5 U.S.C. § 522. Am. Compl., ECF No. 19. Defendants filed this motion to Dismiss for Lack of Jurisdiction on May 19, 2014. Mot. Dismiss, ECF No. 20. Plaintiff filed it Memorandum in Opposition of defendants' motion to dismiss on May 19, 2014. ECF No. 21. Defendants filed their reply to plaintiff's memorandum on June 6, 2014. Reply Opp'n. Mot. Dismiss, ECF No. 24.

I.  **BACKGROUND**

Plaintiff alleges that defendants incorrectly assessed royalties against plaintiff under 30 U.S.C. § 226[1] and brings this action under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, "seeking vacatur of the challenged final agency action, as well as declaratory and injunctive relief." Compl., ECF No. 1 at 2. For reasons stated in the complaint, plaintiff asserts that defendants applied the statute and regulation's provisions incorrectly in assessing royalties, resulting in assessing higher royalties than appropriate under the law. Compl., ECF No. 1 at 2-5. The intricacies of assessing royalties under 30 U.S.C. § 226, while central to the overall cause of action, are not before the Court today in determining whether to grant defendants' motion to dismiss plaintiff's first, second, and third counts pursuant to Fed. R. Civ. P. 12(b)(1) and LCvR 7. Mot. Dismiss, ECF No. 20 at 1. Now before the Court is defendants' motion, which turns instead upon application of the Administrative Procedures Act, 5 U.S.C. §§ 701-706, and the Federal Oil and Gas Royalty Management Act, 30 U.S.C. §§ 1701-1759, as amended by the Royalty Simplification and Fairness Act (hereinafter collectively, "Federal Oil and Gas Royalty Management Act").

The relevant background of this motion starts with defendant Office of Natural Resources Revenue's[2] order to "Report and Pay Additional Royalties," issued on May 5, 2010. Mot. Dismiss, ECF No. 20 at 2. Plaintiff appealed the order on June 10, 2010 under 30 C.F.R. § 290. *Id.*

---

[1] And applicable regulations promulgated by the Department.
[2] This order was issued by the Minerals Management Service, which was the Office of Natural Resources Revenue's predecessor. The Minerals Management Service (MMS) was formed on January 19, 1982 by Secretarial Order Number 3071, as amended on May 10, 1982. In May 2010, after the Deepwater Horizon oil spill and incident, MMS was renamed the Bureau of Ocean Energy Management, Regulation, and Enforcement (BOEMRE) by Secretarial Order Number 3275. Also in 2010, the portion of BOEMRE at issue here was renamed as the Office of Natural Resources Revenue (ONRR) by Secretarial Order Number 3299 (as amended in August 2011).

Defendant Director of Office of Natural Resource Revenue granted this appeal in part and rejected the remainder on April 11, 2013. Exhibit 2 of Am. Compl., ECF No. 19-2. Plaintiff appealed the Director's decision to the Interior Board of Land Appeals on May 22, 2013. Mot. Dismiss, ECF No. 20 at 2. On June 24, 2013, the Interior Board of Land Appeals, "noted that more than 33 months had passed since [plaintiff] had initiated its administrative appeal process on June 10, 2010" and therefore issued an order "to show cause why the appeal should not be dismissed in light of the 33 month deadline" in the Federal Oil and Gas Royalties Management Act and applicable regulations found at 30 U.S.C. § 1724(h) and 43 C.F.R. § 4.904. Mot. Dismiss, ECF No. 20 at 2. Plaintiff responded, stating that 33 months had passed as of June 17, 2013[3], depriving the Interior Board of Land Appeals[4] of jurisdiction by operation of law. Plaintiff subsequently filed suit alleging three claims, the fourth being added in the amended complaint. Compl., ECF No. 1 and Am. Compl., ECF No. 19.

## II.   ANALYSIS

The plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *See Moms Against Mercury v. FDA*, 483 F.2d 824 (D.C. Cir. 2007). Further, as noted generally by defendants, "[a] party bringing suit against the United States bears the burden of proving that the government has unequivocally waived its immunity." Mot. Dismiss, ECF No. 20 at 4 (citing *Tri-State Hospital Supply Corp. v. U.S.*, 341 F.3d 571 (D.C. Cir) 2003 (citations omitted)). In addition, "[w]hen [sovereign immunity] waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity."

---

[3] Including 97 days when the 33-month period was tolled through "an agreement to accommodate settlement discussions." Am. Compl. Ex. C, ECF No. 19-3.
[4] As the Secretary's designee.

3

*United States v. Kubrick*, 444 U.S. 111 (1979). The Court further extended this, noting "although we should not construe such a time-bar provision unduly restrictively, we must be careful not to interpret it in a manner that would 'extend the waiver beyond that which Congress intended.'" *Block v. North Dakota ex rel. Bd. Of University and School Lands*, 461 U.S. 273, 287 (1983) (citing *United States v. Kubrick*, 444 U.S. 111, 117-118 (1979) (citation omitted)). In the instant case, determination of subject-matter jurisdiction depends upon the time limitation provided by the Federal Oil and Gas Royalty Management Act and specifically when the 180 day filing period provided by § 1724(j) ends.

### a. Requirements Under The Administrative Procedures Act

To fully examine defendants' motion, the Court must first turn to the mechanism of plaintiff's suit, which is the Administrative Procedures Act. 5 U.S.C. §§ 701-706. The Administrative Procedures Act allows judicial review of, "[a]gency action made reviewable by statute..." except "to the extent that...statutes preclude judicial review." 5 U.S.C. §§ 704 and 701. Therefore, plaintiff would need to show a waiver of sovereign immunity and final agency action, in order for the Court to have jurisdiction. Defendants do not challenge the waiver of sovereign immunity other than for timeliness of plaintiff's claim. Nonetheless, the Court examines both.

### b. Waiver of Sovereign Immunity and Timeliness Under The Federal Oil and Gas Royalty Management Act

Plaintiff relies upon the Federal Oil and Gas Royalty Management Act's waiver of sovereign immunity. 30 U.S.C. §§ 1701-1759. The Federal Oil and Gas Royalty Management Act sets the time for judicial review of an agency determination "within 180 days from receipt of notice by the lessee or its designee of final agency action." § 1724(j). The Act further discusses

when failure to issue a decision may constitute final agency action at § 1724(h) where it states in pertinent part:

> [i]f no such decision has been issued by the Secretary within the 33-month period referred to in paragraph (1)--...
>
> (B) the secretary shall be deemed to have issued a final decision in favor of the Secretary, which decision shall be deemed to affirm those issues for which the agency rendered a decision prior to the end of such period, as to any monetary obligation the principal amount of which is $10,000 or more, and the appellant shall have a right to judicial review of such deemed final decision in accordance with Title 5.

Plaintiff, however, rightly notes that the 33-month period discussed above, "may be extended by any period of time agreed upon in writing by the Secretary and the appellant." §1724(h)(1). In order to determine whether the Federal Oil and Gas Royalty Act provides the needed waiver of sovereign immunity, the Court must determine whether suit was filed timely as required by the statutory provisions above. The Court must first determine whether defendants' interpretation will be entitled to deference.

### c. *Chevron* Analysis

In *Chevron*, the Court established a two tier analysis:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-3 (1984). Plaintiff argues that defendants' interpretation of § 1724 is not entitled to deference under this analysis. Mem. Opp'n. Mot. Dismiss, ECF No. 21 at 4. In *Adams Fruit Co., Inc. v. Barrett*, the

Court held that a "precondition to deference under *Chevron* is a congressional delegation of administrative authority." 494 U.S. 638, 649 (1990) (citing *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208 (1988). The Court finds the instant case sufficiently analogous to *Murphy Exploration and Production Co. v. U.S. Dept. of the Interior* to apply its analysis here. 252 F.3d 473 (D.C. Cir. 2001). In *Murphy*, the Court said "*Chevron* deference is inappropriate in this case. *Chevron* does not apply to statutes that, like § 1724(h), confer jurisdiction on the federal courts," noting that it is "Well established that '[i]nterpreting statutes granting jurisdiction to Article III courts is exclusively province of the courts.'" 252 F.3d 473, 478 (D.C. Cir. 2011) (citing *Ramsey v. Bowsher*, 9 F.3d 133, 136 n. 7 (D.C. Cir. 1993)). Therefore, the Court does not grant *Chevron* deference to defendants' interpretation of the application of § 1724.

### d. Final Agency Action and Notice Thereof

The issue at bar is simply at what point did plaintiff receive notice of final agency action. Was it when plaintiff received actual notice, or was it automatic by operation of law? Defendants assert that final action occurred after "the 33-month period, plus 97-day tolling period," and that "under the applicable 180-day limitation period for seeking judicial review, this suit should have been brought no later than December 14, 2013." Mot. Dismiss, ECF No. 20 at 7-8. Accordingly, defendants assert that plaintiff's claims 1-3 should be dismissed. *Id.* In order to arrive at this interpretation, defendants assert that the final agency action occurred by operation of the 33-month provision in § 1724(h). Mot. Dismiss, ECF No. 20. Specifically, when defendants failed to act upon plaintiff's appeal, filed June 10, 2010, for 33 months[5] plus 97 days when the time period tolled. Thus, by operation of § 1724(h), defendants' failure to act on the appeal by June 17, 2013 constituted final agency action. Then, under § 1724(j), plaintiff would have 180 days during which

---

[5] Defendants agree that the 33 month period was tolled for 97 days through an Extension and Hold agreement in effect from June 12, 2010 until September 17, 2010. Mot. Dismiss, ECF No 20 at 7-8.

the Federal Oil and Gas Royalty Act's waiver of sovereign immunity would apply, which would be until December 14, 2013, by defendants' calculation. Mot. Dismiss, ECF No. 20 at 7-8.

Conversely, plaintiff asserts that "[d]efendants repeatedly and emphatically contended that no final agency action had occurred on June 17, 2013, and instead only would occur/had occurred either on August 12 or September 1, 2013." Mem. Opp'n. Mot. Dismiss, ECF No. 21 at 1. Plaintiff argues that, contrary to defendants' position, plaintiff's appeal was not denied on June 17, 2013, but rather on July 29, 2013. Mem. Opp'n. Mot. Dismiss, ECF No. 21 at 1-2. Plaintiff further states that they received notice on July 8, 2013 "in unequivocal terms of ONRR's position that *no final agency action had yet occurred* and none would occur until August 12 or final decision by IBLA." Mem. Opp'n. Mot. Dismiss, ECF No. 21 at 2-3.

The Court finds it useful to set forth a full timeline of events not in dispute:

May 5, 2010 – Minerals Mgmt. Service (MMS) Order to Report and Pay Additional Royalties

June 10, 2010 – plaintiff's appeal of MMS Order

June 12, 2010 – settlement discussions initiated (tolling timeline for appeal)

July 26, 2010 – parties enter Extension and Hold Agreement

Aug. 18, 2010 – defendants notify plaintiff that it is withdrawing from settlement discussions

Sep. 17, 2010 – timeline for appeal restarts (30 days after notice of withdrawal)

Apr. 11, 2013 – Director's Decision, Office of Natural Resources Revenue, ECF No. 19-2

Apr. 17, 2013 – Director's Decision mailed to plaintiff

Apr. 23, 2013 – plaintiff receives Director's Decision

May 22, 2013 – plaintiff's appeal of Director's Decision

June 17, 2013 – defendants assert that agency action became final based upon subsequent ruling by Interior Board of Land Appeals, *see* Mot. Dismiss, ECF No 20 at 3

7

June 24, 2013 – Interior Board of Land Appeals issues Order to Show Cause

July 8, 2013 – plaintiff files response to IBLA's Order to Show Cause, ECF No. 20-1

July 22, 2013 – defendants' Answer to plaintiff's Appeal to Interior Board of Land Appeals, ECF No. 19-4

July 29, 2013 – Interior Board of Land Appeals Decision finding that they lacked jurisdiction under the 33-month provision of § 1724(h), ECF No. 19-3.

Jan. 16, 2014 – plaintiff files Compl., ECF No. 1

Mar. 18, 2014 – plaintiff files Am. Compl., ECF No. 19

May 2, 2014 – defendants file Mot. Dismiss, ECF No. 20

May 19, 2014 – plaintiff files Mem. Opp'n. Mot. Dismiss, ECF No. 21

June 6, 2014 – defendants file Reply Opp'n. Mot. Dismiss, ECF No. 24

It is undisputed that plaintiff filed its appeal of the original Minerals Mgmt. Service Order to Report and Pay Additional Royalties on June 10, 2010. This date is the keystone to defendants' interpretation. It appears also undisputed that the 33 month period was tolled from the time that settlement discussions started until 30 days after defendants gave notice that they were withdrawing from discussions[6]. The next significant event appears to be the Decision of the Director of the Office of Natural Resources Revenue, issued on April 11, 2013 and received by plaintiff on April 23, 2013. Plaintiff then appealed the Director's decision on May 22, 2013. On June 14, 2013, in response to plaintiff's appeal, the Interior Board of Land Appeals issued an order to show cause why the appeal should not be dismissed for lack of jurisdiction. The Interior Board of Land Appeals then found, by opinion dated July 29, 2013, that it lacked jurisdiction to hear the appeal based upon defendants' above stated analysis, specifically that 33 months plus 97 days after

---

[6] Though it was disputed in the appeal before the Interior Board of Land Appeals, neither party appears to dispute this portion of the Board's decision.

the initial appeal, on June 17, 2013, the deadline passed for defendants to act upon plaintiff's appeal.

Plaintiff asserts that defendants then "repeatedly and emphatically contend that no final agency had occurred on June 17, 2013." Mem. Opp'n. Mot. Dismiss, ECF No. 21. In reviewing defendant Office of Natural Resources Revenue's response to the Interior Board of Land Appeals Show Cause Order, plaintiff's analysis is that defendants were "bound by ONRR's determination that the Fairness Act period would not expire until August 12 until IBLA overruled that holding." Mem. Opp'n. Mot. Dismiss, ECF No. 21 at 9. The Court notes, however, that § 1724(h) sets the dispositive moment as the Secretary issuing a decision. It does not provide, as plaintiff's argument requires, for tolling of the time period while the Secretary (or delegate) contemplates such a decision.

This brings the Court to the most disputed time period between June 17, 2013 and July 29, 2013. In short, defendants' argument relies upon final agency action occurring at the former by operation of law, but plaintiff's argument prevails if final agency action occurs at the latter by actual notice. In the Court's view, there is a distinction between whether the Interior Board of Land Appeals still had jurisdiction to act upon plaintiff's appeal; and whether plaintiff received notice of final agency action. The Court sees no basis to disturb the Interior Board of Land Appeals' determination that it lacked jurisdiction after June 17, 2013, therefore, although the plaintiff did not receive notice of final agency action until July 29, 2013, the plaintiff received notice by operation of law that the Secretary had not issued a decision within the 33 month period[7]. Thus, as in *Eagle-Picher Industries, Inc. v. U.S. E.P.A.*, plaintiff delayed "filing [its] request[] for

---

[7] Including the 97 days discussed above.

review on their own assessment of when an issue [was] ripe for review," and therefore "did so at the risk of finding their claims time-barred." 759 F.2d 905, 909 (D.C. Cir. 1985).

### e. Equitable Tolling

Plaintiff further argues that even if the Court finds that plaintiff had notice prior to July 29, 2013, equitable tolling is "presumptively appropriate under 30 U.S.C. §1724(j)." Mem. Opp'n. Mot. Dismiss, ECF No. 21 at 3. Plaintiff rests this argument on "defective notices provided by [d]efendants to Continental that affirmatively misinformed Continental as to when final agency action had occurred." Mem. Opp'n. Mot. Dismiss, ECF No 21. At 6-7. The Court does not agree. In fact, "[e]quitable tolling is granted sparingly." *Impact Energy Resources, LLC v. Salazar*, 693 F.3d 1239, 1246 (10th Cir. 2012). The Supreme Court examined grounds for equitable tolling in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). In *Irwin*, the Court noted that in granting equitable tolling sparingly, "[w]e have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 498 U.S. 89, 96 (1990). The *Irwin* court noted that it has "generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.* (citing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984). Given the Court's analysis above, the Court does not agree that equitable tolling is appropriate in this case.

### III. CONCLUSION

In light of the Court's analysis, defendants' Motion to Dismiss the first, second, and third counts of plaintiff's amended complaint for lack of jurisdiction will be GRANTED by separate order issued this date.

DATED: September 29, 2015

                                            Royce C. Lamberth
                                            United States District Judge