# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CONTINTENTAL RESOURCES, INC.,

    *Plaintiff*,

v.

GREGORY J. GOULD, Director, Office of
Natural Resources Revenue, United States
Department of Interior, *et al.*,

    *Defendants*.

Civil Action No. 14-65 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Continental Resources, Inc. ("Continental") extracts natural gas from federally leased land and pays royalties to the federal government based on the value of the gas that it sells. From 2003 to 2006, Continental reported and paid royalties to the Department of Interior's Minerals Management Service ("MMS")—a predecessor to what is now the Office of Natural Resources Revenue ("ONRR")—for leases in Washakie County, Wyoming based on Continental's assessment that it sold its unprocessed gas to an unaffiliated entity pursuant to an arm's-length agreement. Following an audit, MMS disagreed and found that both Continental and Hiland Partners, the entity that purchased Continental's gas, were owned or controlled by the same individual, Harold Hamm. MMS, accordingly, ordered that Continental pay additional royalties. Continental, in turn, appealed that decision to the Director of what by then had become ONRR, who agreed that Continental sold the gas at issue pursuant to a non-arm's-length contract but concluded that the audit letter applied the wrong benchmark for determining the value of a non-arm's-length sale. According to the Director, Continental should have valued its

sale of its unprocessed gas under a provision of the governing regulation that values processed gas sold pursuant to a non-arm's length transaction based on:

> consideration of other information relevant in valuing like-quality [processed gas], including gross proceeds under arm's length contracts for like-quality [processed gas] from the same gas plant or other nearby processing plants, posted prices for [processed gas], prices received in spot sales of [processed gas], [and] other reliable information as to the particular lease operation or the saleability of such [processed gas].

Dkt. 70-32 at 16 (quoting 30 C.F.R. § 206.153(c)(2)).[1] Under another subsection of the regulation, that value is then reduced by, among other things, the "applicable transportation allowances and processing allowances" to arrive at the "value of production for royalty purposes." 30 C.F.R. § 206.153(a)(2); *see also* Dkt. 76 at 13 (Mar. 22, 2019 Hrg. Trans.).

Continental challenges ONRR's determination on numerous grounds under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Mineral Leasing Act, 30 U.S.C. § 181 *et seq.*, and the Due Process Clause, U.S. Const., amd. V, and the parties have now filed cross-motions for summary judgment. Dkt. 56, Dkt. 59. Because ONRR's determination is "plainly . . . inconsistent with the regulation," *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945), and fails the APA test of "reasoned decisionmaking," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 52 (1983), the Court will set the determination aside and remand the matter to ONRR for further consideration consistent with this opinion.

---

[1] Because the events at issue occurred between 2000 and 2006, the Court references the 2003–2006 version of the applicable regulation, unless stated otherwise. ONRR's current regulation addressing gas valuation is codified at 30 C.F.R. § 1206.150 *et seq.*

# I. BACKGROUND

Pursuant to the Federal Oil and Gas Royalty Management Act, 30 U.S.C. § 1701(a)(2), the Secretary of the Interior has promulgated a regulation "establishing methods for determining the 'value of the production' for royalty calculation purposes." *Fina Oil & Chem. Co. v. Norton*, 332 F.3d 672, 673 (D.C. Cir. 2003) (hereinafter "*Fina*"). "The regulation establishes three different valuation methodologies, depending on the particular entity to whom producers first sell the gas." *Id.* at 673–74. Two provisions are relevant here: 30 C.F.R. § 206.152 ("Section 152") and 30 C.F.R. § 206.153 ("Section 153"). Section 152 "applies to the valuation of all gas that is not processed and all gas that is processed but is sold or otherwise disposed of by the lessee pursuant to an arm's-length contract prior to processing," 30 C.F.R. § 206.152(a)(1), while Section 153 "applies to the valuation of all gas that is processed by the lessee and any other gas production to which" the regulation "applies and that is not subject to the valuation provisions of" Section 152, *id.* § 206.153(a)(1). Although the two provisions apply to different types of products, they use the same three valuation methods, as adjusted to account for the products at issue.

The first methodology applies to gas sold to non-affiliated entities under arm's-length contracts. Unsurprisingly, this approach values the gas based on the "gross proceeds accruing to the lessee." *Id.* § 152(b)(1)(i); *id.* § 153(b)(1)(i). The second methodology applies to gas sold to "marketing affiliates," a term that is narrowly defined to include only "entities that purchase gas exclusively from producers that own or control them." *Fina*, 332 F.3d at 674. Under that methodology, the gas is valued based on the downstream sale by the marketing affiliate. *Id.* § 152(b)(1)(i); *id.* § 153(b)(1)(i). Finally, the third methodology values gas that is "not sold pursuant to an arm's-length contract," other than a sale to a "marketing affiliate," based on one

of three benchmarks: (1) use of the lessee's gross proceeds, if those "proceeds are equivalent to the gross proceeds derived from, or paid under, comparable arm's-length contracts;" (2) use of "other information relevant to valuing like-quality [gas], including gross proceeds under arm's-length contracts for like-quality gas[,] . . . posted prices[,] . . . prices received in arm's-length spot sales[,] . . . other reliable public sources of price or market information, and other information as to the particular lease operation or the saleability of" the gas; or (3) use of "a net-back method or any other reasonable method to determine value." *Id*. § 152(c); *id*. § 153(c). Benchmarks (1) and (2), however, apply differently depending on whether the gas that is sold pursuant to the non-arm's-length contract is unprocessed or processed gas. In the case of unprocessed gas, the relevant comparators are contracts for the sale of unprocessed gas, *id*. § 152(c)(1) & (2), while in the case of processed gas—referred to in the regulation as "residue gas or gas plant products"—the relevant comparators are other sales of residue gas or gas plant products, *id*. § 153(c)(1) & (2).

The present dispute involves valuation of natural gas that Continental extracted pursuant to a federal leasehold and sold between 2003 and 2006 to a natural gas processor, which ONRR variously refers to as Hiland, Hiland Partners, and Hiland Partners, LP. Although Continental challenges the ONRR decision, in part, on the ground that the agency misidentified, and misunderstood the relationships between, the various Hiland entities, that question is not relevant to the Court's decision. For present purpose, the Court will, therefore, simply refer to "Hiland." In paying federal royalties, Continental treated its sales to Hiland as arm's-length transactions, and it, accordingly, applied the first methodology discussed above—that is, the gross-proceeds methodology.

4

In 2010, however, MMS issued an audit letter concluding that Continental and Hiland were, in fact, affiliated entities and that, as a result, the transactions at issue were not arm's length. *See* Dkt. 70-32 at 7 (AR 4891). According to the audit letter, because Continental and Hiland were under common ownership or control, Continental erred in applying the gross-proceeds methodology under Section 152(a), and, instead, should have applied the valuation method set forth in Section 153(c)(1). *Id.* at 7–8 (AR 4891–92). That provision—the first benchmark for processed gas—values processed gas sold in a non-arm's-length transaction by looking to "[t]he gross proceeds accruing to the lessee pursuant to a sale under its non-arm's-length contract . . . , provided that those gross proceeds are equivalent to the gross proceeds derived from, or paid under, comparable arm's-length contracts for purchases, sales, or other dispositions of like quality residue gas or gas-plant products from the same processing plant." 30 C.F.R. § 206.153(c)(1). MMS then calculated the corrected royalty rate using sales invoices provided by Hiland, not Continental. Dkt. 70-32 at 8 (AR 4892). MMS ultimately ordered Continental to report and pay $1,772,612.07 in additional royalties. *Id.*

Continental timely appealed that decision to the Director of ONRR. The Director affirmed in part and reversed in part. First, the Director affirmed MMS's finding that Continental sold gas to an affiliated entity. The Director then explained that for Section 152 to apply, "one of two elements must be met: (1) the gas is not processed, or (2) the gas is processed, but is sold prior to processing under an arm's-length contract." *Id.* at 13 (AR 4897). Although the Director did not address the first of these possibilities, the Court asked counsel to explain what it means to say that "the gas is not processed," and counsel represented that there are times that natural gas is sold *and used* without processing; that is, the gas is never processed. The Director did address the second possibility and, consistent with his conclusion that the sale from

Continental to Hiland was not arm's length, he concluded that Section 152 "is not applicable here." *Id.* at 14 (AR 4898). Because Section 153 applies to "gas that is processed by the lessee" and to "any other gas production . . . not subject to the valuation provisions" set forth in Section 152, and because he had concluded that Section 152 was inapposite, the Director turned to Section 153.

Thus far, the Director's analysis tracked the audit letter's. The Director disagreed, however, with the audit letter's conclusion that the first benchmark was applicable. He explained that Section 153(c)(1) "allow[s] ONRR to use the gross proceeds accruing to the lessee where such gross proceeds are the equivalent to other gross proceeds derived from, or paid, under comparable arms-length contracts for processed gas from the same plant." Dkt. 70-32 at 15 (AR 4899). Thus, "if Continental's gross proceeds—not Hiland['s] gross proceeds—are comparable to other arm's-length sales of the gas at the tailgate of the Hiland Plant, ONRR could value Contintental's gas by performing a comparative analysis of the arm's-length deals." *Id.* But that comparison falls apart on the facts of the transactions at issue here. As the Director explained, "Continental's gross proceeds are those derived from Continental's sale of the *unprocessed* gas," and therefore "ONRR cannot compare Continental's non-arm's-length sales of unprocessed gas to other arm's-length sales of *processed* gas." *Id.* (emphasis added). "In other words," he concluded, "there are no comparable sales." *Id.* And, as a result, Section 153(c)(1) cannot apply.

The Director concluded that, "[i]nstead, the proper benchmark in determining the value of the reside gas and gas plant products is [Section] 206.153(c)(2)." *Id.* at 16 (AR 4900). That benchmark uses a:

> value determined by consideration of other information relevant in valuing
> like-quality residue gas or gas plant products, including gross proceeds

6

> under arm's-length contracts for like-quality residue gas or gas plant products from the same gas plant or other nearby processing plants, posted prices for residue gas or gas plant products, prices received in spot sales of residue gas or gas plant products, other reliable public sources of price or market information, and other information as to the particular lease operation or the saleability of such residue gas or gas plant products.

30 C.F.R. § 206.153(c)(2). The Director then explained his reasoning in a single paragraph:

> For the calendar years of 2004 through 2006, Hiland partners sold the residue gas from the plant under arm's-length contracts. And, throughout the period at issue, Hiland Partners sold gas plant products at the tailgate of the Hiland Plant under arm's-length contracts. These arm's-length sales represent sales of like-quality residue gas and gas plant products from the same plant. Thus, these arm's-length sales provide a reasonable basis for ONRR to determine value under 30 C.F.R. § 206.153(c)(2).

Dkt. 70-32 at 16 (AR 4900). In other words, Hiland's sales were comparable to Hiland's sales.

Continental appealed the Director's decision. But, because the governing statute requires that the Secretary of the Interior "issue a final decision in any administrative proceeding . . . within 33 months of the date such proceeding was commenced," 30 U.S.C. § 1724(h), and because the Director issued his decision only 60 days before the 33-month period ran, there was insufficient time for the Secretary to render a further decision, and the Director's decision became the final agency action. Continental subsequently commenced this lawsuit, alleging that the Director's decision was arbitrary and capricious or otherwise contrary to law under the APA, 5 U.S.C. § 702. Dkt. 42 at 15–17 (Second Am. Coml. ¶¶ 58–66). The parties' cross-motions for summary judgment are currently before the Court.

## II. ANALYSIS

Continental asks the Court to set aside the Director's decision as unlawful on any one of three grounds. It argues (1) that the record does not support ONRR's determination that Continental and Hiland are affiliated entities; (2) that ONRR did not provide Continental with

7

the relevant data it used to calculate the additional royalties, thus violating Continental's right to due process and, for separate reasons, rendering the order invalid; and (3) that even if the record did support a finding of affiliation, ONRR misconstrued its regulations and applied the wrong valuation method. The Court agrees with the third contention and will, accordingly, set aside the order and remand the matter to ONRR.

**A.     ONRR's Decision is Contrary to Law**

Although an agency is entitled to substantial deference in interpreting its own regulations, that deference is cabined by the plain language of the regulation; no deference is due to an interpretation that is "plainly erroneous or inconsistent with the regulation."[2] *Chase Bank USA N.A. v. McCoy*, 562 U.S. 195, 208 (2011) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). Thus, while according agencies the deference to which they are due, the Court must also enforce the "unambiguous" terms of existing regulations and must ensure that an agency does not, in effect, create a new regulation "under the guise of interpreting" an existing one. *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). As explained below, the Director's determination that the royalties that Continental owes the government must be calculated under Section 153(c)(2) cannot be squared with the plain language of the valuation regulation.

The difficulty with the Director's conclusion is evident in the very first clause of Section 153(c), which provides: "The value of residue gas or any gas product"—that is, the value of processed gas—"which is not sold pursuant to an arm's-length contract shall be the reasonable value determined in accordance with the first applicable of" the three benchmarks. 30 C.F.R.

---

[2]  Although the Supreme Court is currently considering whether to limit or overturn *Auer v. Robbins* and *Bowles v. Seminole Rock & Sand Co.*, *see Kisor v. Wilkie*, 139 S. Ct. 657 (2018), that decision is unlikely to have any bearing on the present dispute for the reasons discussed below.

8

§ 206.153(c)(1). In other words, if ONRR cannot reasonably value a sale of processed gas based on the gross proceeds of the actual sale because that gas was "not sold pursuant to an arm's-length contract," the gas must be valued based on one of the three benchmarks—that is, proxies for how much revenue an arm's-length sale would have generated. The problem here, however, is that Hiland's sale of the *processed* gas was at arm's length. As counsel for the government candidly acknowledged, the government "does not have any reason to believe that the Hiland . . . sale to the next purchaser [was not] at arm's length," and ONRR "has not contended otherwise." Dkt. 76 at 8 (Mar. 22, 2019 Hrg. Trans.). Instead, the Director's decision turned on the premise that Continental's sale of *unprocessed* gas to Hiland was not at arm's length. Whether or not that assessment was accurate, it has nothing to do with Section 153(c), which applies only if the *processed* gas at issue was "not sold pursuant to an arm's-length contract." 30 C.F.R. § 206.153(c).

That distinction, moreover, is not only compelled by the language of the regulation, but by common sense. The purpose of each of the benchmarks contained in Section 153(c) is to determine what proceeds an arm's-length sale of the processed gas would have generated. The first benchmark, for example, asks whether the "gross proceeds" received for the processed gas were "equivalent to the gross-proceeds derived from, or paid under, comparable arm's-length contracts for purchases, sales, or other dispositions of like quality residue gas or gas-plant products," *id.* § 206.153(c)(1), and the second benchmark looks to "other information relevant to valuing like-quality residue gas or gas plant products," *id.* § 153(c)(2). But where, as here, there is no dispute that the sale of the processed gas was at arm's length, there is no reason to look to proxies to determine what an arm's length sale might have generated. In short, both the language and purpose of Section 153(c) have no bearing on a case, like this one, where the government

9

contends that the sale of the unprocessed gas to the processor was not at arm's length, but where there is no dispute that the sale of the processed gas was at arm's length.

The Court, accordingly, concludes that the Director's decision is premised on a reading of the regulation that is "plainly erroneous [and] inconsistent with the regulation." *Seminole Rock & Sand Co.*, 325 U.S. at 414.

**B.     ONRR's Decision is Arbitrary and Capricious**

The Director's decision suffers from a second, and related, flaw. The APA does not only demand compliance with existing statutes and regulations, it also requires "reasoned decisionmaking." *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 52. In applying this standard, the Court once again starts with the premise that the APA standard of review is "narrow" and that a court must not "substitute its judgment for that of the agency." *Id*. at 43. But, as with *Auer* deference, there are limits to this deference; it is ultimately the role of the Court to "ensur[e] that agencies have engaged in reasoned decisionmaking," which requires, among other things, the Court to review whether the agency considered "the relevant factors and whether there was a clear error in judgment." *Id.*; *see also Judulang v. Holder*, 565 U.S. 42, 53 (2011). For multiple reasons, the Director's decision fails even this deferential test.

To start, the Director did not even attempt to explain how Section 153(c)—which, as noted, deals with non-arm's-length sales of *processed* gas—applies to Continental's allegedly non-arm's-length sale of *unprocessed* gas. ONRR was required to "provide an explanation that will enable the [C]ourt to evaluate the agency's rationale at the time of decision," *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990), and it failed to do so. Nor can this omission be disregarded based on the principle that courts should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v.*

*Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). Here, the Court cannot divine from the Director's decision why he concluded that a provision that is both textually and logically inapposite should govern the calculation of the royalties that Continental owes.

During a teleconference on March 22, 2019, government counsel attempted an answer to the question why the Director applied this seemingly-inapt provision. As he explained it, the regulation, considered as a whole, "is less than crystal clear," Dkt. 76 at 8 (Mar. 22, 2019 Hrg. Trans.), and none of the other subsections precisely fit the present scenario. The Director, accordingly, was required to choose among a series of less-than-ideal options. *Id.* at 12. That response, however, fails for several reasons. First, and most significantly, nothing in the Director's decision (or in any other agency determination or policy that ONRR identifies) advances this contention. It is unclear whether that rationale would pass muster. It is clear, however, that it will not suffice when advanced for the first time before the reviewing court. Because neither the Court nor counsel may "supply a reasoned basis for [an] agency's action that the agency itself has not given," *Bowman Transp.*, 419 U.S. at 285–86 (citing *SEC v. Chenery Corp.* ("*Chenery II*"), 332 U.S. 194, 196 (1947)), the Court cannot uphold ONRR's decision based on a theory raised for the first time on judicial review. Nor is the Court convinced, at least on the present record, that the approach that the Director adopted is the best of a range of bad interpretative options. Although other provisions of the regulation might not fit perfectly, applying those provisions that address the non-arm's-length sale of *unprocessed* gas at least makes sense. Rather than sort through these other options in the first instance, however, the Court concludes that principles of administrative law and common sense dictate that ONRR consider these other options before the Court does so.

Finally, the Director's decision is internally inconsistent. In particular, he disagreed with the audit letter to the extent it applied the first benchmark under Section 153(c) because that provision considers whether the "gross proceeds accruing to the lessee"—here, Continental— "are equivalent to the gross proceeds derived from, or paid under, comparable arm's-length contracts for" processed gas. Dkt. 70-32 at 15 (AR 4899). As the Director explained, that comparison is nonsensical in this context because Continental sold unprocessed gas and, thus, the proceeds of sales of processed gas would never be comparable. *Id*. That seems correct. But the Director then proceeded to apply the second benchmark, which also looks to "information relevant in valuing like-quality" processed gas, "including gross proceeds under arm's-length contracts for like-quality" processed gas. *Id*. at 16 (AR4900) (quoting 30 C.F.R. § 206.153(c)(2)). For the reasons explained above, that comparison is of no value where, as here, Continental allegedly sold unprocessed gas in non-arm's-length transactions, and Hiland sold processed gas in arm's-length transactions. The Director's approach might avoid one difficult phrase contained in the first benchmark—"gross proceeds accruing to the lessee"—but it faces precisely the same substantive problem that the Director identified in the audit letter.

The Court, accordingly, concludes that the Director's decision is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

**C.     Next Steps**

This, then, brings the Court to the question of the appropriate next steps. As the D.C. Circuit has advised, "[u]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995). In its brief,

Continental argued (1) that "because of Defendant's delay during the administrative appeals process, the Board has since lost jurisdiction to review the Decision due to the expiration of the thirty-three month period under 30 U.S.C. § 1724(h)(2)," and (2) that they "are aware of no authority permitting a district court upon judicial review to re-open or otherwise re-initiate an already-expired administrative appeals process under these circumstances." Dkt. 56-1 at 44.

The Court is unconvinced, and both parties now seem to agree that the 33-month clock for an administrative decision does not preclude a remand. During the March 22, 2019 teleconference, agency counsel represented that ONRR could further consider its decision on remand, and counsel for Continental agreed that the "way of wisdom" would be "to remand the case to the agency, allowing Continental to preserve its [other] arguments," Dkt. 76 at 27 (Mar. 22, 2019 Hrg. Trans.). The Court agrees that a remand is the "way of wisdom." Section 1724(h) merely requires that the Secretary render a final administrative decision within 33 months. 30 U.S.C. § 1724(h). It says nothing about the Court's authority to order a remand, and it says nothing about ONRR's authority on remand. A remand, moreover, would allow the expert agency to determine in the first instance how best to interpret and to apply its regulation in light of this opinion, and it would further the statutory interest in expedition.[3]

---

[3] On March 27, 2019, Defendants filed a motion for leave to file "supplemental briefing more fully addressing the Court's questions" from the March 22, 2019 telephone conference, arguing that such briefing would be "particularly valuable insofar as the Court seeks Defendants' position on the continuing validity of any aspect of the Office of Natural Resource Revenue's ('ONRR') regulations, because any response to such an inquiry would require coordination with Department of the Interior leadership." Dkt. 72 at 1. Defendants further argued that the telephone conference was, in Continental's words, "akin to 'oral argument,'" Dkt. 75 at 1 (quoting Dkt. 74 at 2) and that, "at oral argument, counsel for Defendants would have had agency representatives attend the hearing (even telephonically) to consult with during the course of the hearing." *Id.*

The March 22, 2019 teleconference, however, merely sought clarification on the parties' pending and fully-briefed cross-motions for summary judgment; neither the Court nor Continental raised

## CONCLUSION

Defendant's motion for summary judgment, Dkt. 61, and motion for leave to file supplemental briefing, Dkt. 72, are hereby **DENIED**, and Plaintiff's motion for summary judgment, Dkt. 56, is hereby **GRANTED** for the reasons set forth above. It is, accordingly, **ORDERED** that the matter be remanded to ONRR for further proceedings consistent with this opinion.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 30, 2019

---

any issues that were not raised in prior briefing. To the extent that Defendants wish to further explain the merits of the agency's interpretation, moreover, that discussion is immaterial to the present dispute; the Court must "judge the propriety of [ONRR's] action solely by the grounds invoked by the agency." *Chenery II*, 332 U.S. at 196. The Court, therefore, will deny Defendants' motion for leave to file supplemental briefing, Dkt. 72.